UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
INTZAR HUSSAIN,

                            Petitioner,                    <u>NOT FOR PUBLICATION</u>
         -against-                                         **MEMORANDUM & ORDER**
                                                           08-CV-2375 (CBA)
ROBERT WOODS,

                            Respondent.
----------------------------------------------------------------x
AMON, Chief United States District Judge:

        Intzar Hussain, pro se, petitions the Court for a writ of habeas corpus, 28 U.S.C. § 2254,

seeking to vacate his convictions, entered in New York state court, on two counts of first-degree

rape, N.Y. Penal Law § 130.35(1), one count of first-degree attempted rape, N.Y. Penal Law

§ 110.00, 130.35(1), and one count of first-degree sexual abuse, N.Y. Penal Law § 130.65(1).

For the reasons that follow, the petition is denied.

BACKGROUND

    **A. Conviction**

        At an April 2004 trial, the state offered evidence that Hussain committed five sexual

assaults from October 1996 to February 1998.  The first assault occurred in October 1996 and the

victim was Kizzy Lewis.  Lewis testified that at about 10:00 a.m. she was walking along a street

in Brooklyn when Hussain, driving a livery cab, asked if she needed a ride.

        When she refused the ride, Hussain left his cab, put a knife to her back, and ordered her

into the car.  Hussain drove Lewis a short distance, ordered her out of the car, took her across the

street, entered her from behind, and ejaculated.  Hussain then ran back to his car and sped off.

Lewis went to a nearby train station and called the police.

1

The second assault occurred in December 1996 and the victim was Carol Robinson. Robinson testified that at about 1:30 p.m. she left a Brooklyn hospital and hailed a cab, which was driven by Hussain, who drove Robinson about fifteen minutes to her apartment.

When Robinson arrived at her apartment building, she discovered that she did not have any money with her. She told Hussain to wait while she retrieved money from her apartment. When Robinson entered the second door of her building, she realized that Hussain was following her and told him that he should wait for her outside.

Hussain continued to follow Robinson to her apartment door, where she retrieved a key from beneath a floor mat. When Robinson opened her door, Hussain kicked her in the back, propelling her into the apartment. He then entered the apartment, closed the door, got on top of Robinson, pulled a knife, and penetrated her. When Hussain left, Robinson crawled to the telephone, called her daughter, and reported that she had been raped.

The third assault occurred in February 1997. The victim was Blanca Laboy, a heroin addict. Laboy testified that at about 3:00 p.m., while she was walking home from a methadone clinic, Hussain approached her in his cab and asked for directions.

When Laboy entered the front seat of the cab to help Hussain read his map, Hussain sped away. When Laboy asked what he was doing, he told her, "Shut up or I'll kill you." Hussain had his hand inside his jacket pocket, which led Laboy to believe he had a weapon.

Hussain drove to an empty street, ordered Laboy into the backseat of the car, and told her to remove one of her legs from her pants. Laboy told Hussain that she was menstruating and asked him to use a condom, although he did not appear to understand what she was saying. Hussain then pushed her onto her back and penetrated her.

Hussain then drove off, leaving Laboy behind.  Laboy took the bus to her sister's house and told her sister that she had been raped.

The fourth assault was committed against Haydee Torres and occurred in May 1997.  Torres testified that she was standing outside a bodega when Hussain pulled up in his cab and asked her if she needed a ride.  When Torres said that she could not afford a ride, Hussain told her not to worry about it.  She agreed to take the ride, Hussain put her bicycle into the trunk of the cab, and they drove off.

After driving a short distance, Hussain turned off the road, locked the car doors, and pulled into an empty lot near a factory.  Hussain told Torres to remove her pants, and when she refused, he put a knife to her neck.  Torres complied.  Hussain then got on top of Torres, and, still holding the knife, penetrated her.

Hussain forced Torres out of the car and sped off, causing her bicycle to fall from his trunk.  Torres then rode her bicycle to a friend's house and told the friend that she had been raped by a cab driver.

The fifth assault occurred in February 1998.  The victim, Maria Morales, testified that at about 9:30 p.m. she was waiting for the bus in Brooklyn when Hussain, in his cab, asked her if she wanted a ride.  Morales accepted and the two drove off.

After driving for a bit, Hussain told Morales that he needed money and stopped at a bank.  When he left the car, Morales moved to the backseat, apparently because she was not comfortable in the front.  When Hussain returned he offered to pay Morales if she would "jerk him off."  She refused.

Hussain then drove Morales to a deserted street and stopped the car.  He got out and entered the backseat, where he forced Morales onto her back and tried to penetrate her.  Morales

fought him and Hussain ejaculated without entering her. Morales left the car crying and Hussain sped off.

Morales collected her things and ran until she saw a man, whom she told that she had been raped. The man was walking her to a police station when the two spotted a police officer, whom they asked for help.

At trial, in addition to the testimony of the five victims, the state offered evidence about the investigation that led to Hussain's arrest. It explained that a detective, Charles Hawkins, using a license plate number that Morales had provided, identified Hussain as a suspect. Hawkins contacted the car service for which Hussain worked, but Hussain was not there. He then visited an apartment linked to Hussain, but a woman who responded to a knock on the door refused to let the detective in or to open the door.

Hawkins then had his partner call the car service, requesting that Hussain pick him up, but Hussain did not show. Hawkins also contacted the Taxi and Limousine Commission to have the Commissioner call Hussain for a meeting, telling him that he needed to sign some papers. The Commissioner was to call when Hussain showed up, but he never did.

Hawkins also put a felony alarm on Hussain's license late, but later learned that Hussain had surrendered his plates on March 19, 1998, about a month after Hawkins began searching for him.

The state explained to the jury that the assault investigations were cold until, in the spring of 2000, the City of New York sent about 17,000 rape kits, including the kits for the assaults described above, for DNA testing. That testing revealed that the same man had probably committed all five assaults.

Detective Steven Litwin of the Brooklyn Special Victims Squad learned of the match and that Hussain was a suspect in at least one of the assaults. When Litwin visited an address linked to Hussain, he learned that Hussain had moved, possibly to Canada.

In March 2002, Litwin contacted Canadian police in Toronto and learned that Hussain had been living in Canada for over three years and was currently living in Montreal under a different name, Tony Intzar Chaudhery, and with a different date of birth. Litwin then contacted the Montreal Police Department's Sexual Assault Squad and applied for a provisional arrest warrant. From that same unit he later secured a warrant to test Hussain's DNA.

Hussain's DNA sample was obtained and tested in New York. The sample matched the profile of the man who had assaulted Lewis, Laboy, Torres, and Morales. Accordingly, Hussain was indicted for those assaults in June 2002 and Litwin arrested Hussain in September 2002. Hussain was indicted in early 2003 for the assault of Robinson after the lab matched his DNA to the DNA from the Robinson rape kit.

At trial, although he had earlier denied any contact with at least one of the women, Hussain admitted that he had sexual contact with each of the five complaining women. He denied aspects of each woman's story, questioned their veracity, and said that the sex, or near sex, was consensual in each case.

The jury returned a mixed verdict, convicting Hussain of raping Lewis and Torres and attempting to rape and actually sexually abusing Morales (whom he had not penetrated). The jury failed to convict Hussain of the charges with respect to the assaults of both Robinson and Laboy and the trial court declared a mistrial as to these charges.

The trial court later sentenced Hussain to twelve and one-half to twenty five years on each completed rape, seven and one-half to fifteen years on the attempted rape, and three and

one-half to seven years on the sexual abuse conviction. The sentences on the rape charges were imposed consecutive to each other and concurrent to the sexual assault sentence.

### B. Post Conviction

### 1. Direct Appeal

Hussain, through new counsel, appealed to the Appellate Division, Second Department, asserting two principal grounds for relief. As his first ground for relief (Point I), Hussain alleged that the joint trial of all five assaults violated his due process rights.

In support of that due process argument, he raised three specific sub-points. He said first that the trial court erred by not severing the five counts for trial under N.Y. C.P.L. § 200.20(3) because the identity of the perpetrator was not an issue at trial, and even if it was, the rapes were not so similar as to be called the work of the same man. Moreover, the assaults could not be said to have been committed as part of a common scheme or plan.

Hussain argued as a second sub-point that at trial the prosecutor impermissibly comingled the evidence and urged the jury to convict Hussain based upon propensity evidence. For example, she, in her summation, had talked about what "all five" women had said and done and even said that "each case corroborates [the] others."

As a third sub-point supporting relief, Hussain argued that the trial court failed to specifically instruct the jury that it needed "to consider each [count] individually and that the evidence regarding each crime should be confined to that crime and not considered cumulatively." People v. Range, 49 A.D.2d 832 (1st Dep't 1975.).

The second ground for relief that Hussain asserted (Point II) was that two pieces of testimony and several remarks during summation denied him due process of law. The first testimony to which he objected was testimony that the state extradited Hussain from Canada. He

said that the government could only place him in Canada some nine months after the Morales investigation closed and that fact made his presence in Canada weak evidence of consciousness of guilt through flight.

This weak evidence was prejudicial, and that prejudice was compounded, he said, by the prosecutor's argument, during summation, that the flight to Canada proved Hussain's guilt. Moreover, although Hussain acknowledged that, during summation, the trial court sustained an objection to the prosecutor's description of Canada as a haven for fugitives, he said that argument was improper and the sustained objection could not "un-ring the bell."

The second testimony that Hussain identified as supporting his due process argument was detective Litwin's statement that he had contacted the Montreal Sexual Assault Squad as part of his investigation. Hussain acknowledged that the state could describe its investigation, but said that specifically mentioning the Sexual Assault Squad (instead of just the police department generally) needlessly suggested that Hussain had committed uncharged sex crimes in Canada.

Finally, Hussain identified as the third sub-point of his due process argument several summation comments that he found objectionable. First, he said that the prosecutor argued propensity, calling him a "rapist" and a "predator." Second, the prosecutor denigrated the defendant, saying that he had a "warped mind" if he thought, as he testified, that women sometimes trade sex for rides. Moreover, the prosecutor twice labeled his testimony "absurd."

Third, Hussain argued that the prosecutor had impermissibly appealed to the jury's passions, stating that Laboy and Robinson did not "deserve" to be raped and stating that the women who testified at trial endured cross-examination that surely "wasn't fun." The prosecutor also suggested that Hussain thought the victims in this case were beneath the law and asked the jury to tell Hussain, through its verdict, that he was not above the law.

Fourth, the prosecutor had impermissibly used Hussain's words against him. Specifically, after defense counsel had said more than once, during summation, that Hussain was a "con man" who had conned the victims into having sex with him, the prosecutor told the jury that Hussain was "trying to con" it.

The Appellate Division, Second Department denied relief by written opinion. People v. Hussain, 35 A.D.3d 504 (2d Dep't 2006). It rejected Hussain's joinder argument, holding that "the defendant's modus operandi with respect to each of the sexual assaults demonstrated a distinctive pattern." Id. at 505. It observed that identity was an issue at the time that the trial court denied severance (Hussain had not yet fully adopted the consent defense) and remained an issue at trial because identity had not been "conclusively established." Id.

The court ruled also that Hussain had not preserved his arguments about the jury instruction or the summation comments that allegedly invited commingling. Id.

With respect to the second principal ground for relief, the Appellate Division held that the evidence and comment "that the defendant relocated to Canada using a different name and date of birth was proper to demonstrate consciousness of guilt." Id. Moreover, although the mention of the Sexual Assault Squad was improper, the error was harmless. Id.

With respect to summation, the court found that the comments to which Hussain had objected (i.e. "warped mind" and victims beneath the law) were "fair comment on the defendant's testimony at the trial and the other evidence in the record." Id. The court held that Hussain had not preserved objections to any of the other summation comments to which he objected on appeal and it refused to address them. Id. at 505–06.

The New York Court of Appeals denied Hussain's request for leave to appeal. People v. Hussain, 8 N.Y.3d 946 (2007) (Pigott, J.).

8

## 2. Error Coram Nobis

In July 2007, Hussain, pro se, filed a petition for a writ of error coram nobis in the Appellate Division, Second Department. He asked for relief on the ground that his attorney rendered ineffective assistance on appeal when he failed to argue that the trial court erred when it denied a pre-trial motion to dismiss the charges against Hussain as time barred because brought outside the applicable five-year statute of limitations. N.Y. C.P.L. § 30.10(2)(b).

Hussain referred to trial counsel's motion to dismiss, which argued that the Lewis (October 1996), Robinson (December 1996), and Laboy (February 1997) assaults were all the subject of charges filed more than five years after the relevant assault.

Counsel argued that the limitations period could not be tolled, pursuant to N.Y. C.P.L. § 30.10(4)(a), for a sufficient period because Hussain had not been (i) continuously outside the jurisdiction and (ii) his whereabouts (which include identity _and_ location) were not continuously unknown and unknowable by exercise of reasonable diligence.

In that motion, counsel observed that Hussain had been arrested in Brooklyn in September 1997 on two unrelated sexual assaults, had been photographed and fingerprinted, and had testified before a grand jury. He argued that the state should have been able to connect him to the previous assaults at that time (by, for example, showing his photograph to the complainants or testing his DNA), but unreasonably failed to do so.

Moreover, he argued, Hussain was not continuously outside the jurisdiction because he had lived in Brooklyn throughout the late 1990s and had only visited Montreal in 2002.

The state had responded that it had been diligent in pursuing the three assaults that Hussain challenged as untimely and that it did not know of Hussain's whereabouts until rape kits were tested in 2001, which rendered all of the charges timely.

In the error coram nobis proceeding, appellate counsel submitted an affirmation in which he explained that he had carefully reviewed the record and determined that the timeliness issue lacked merit.  He said that, as trial counsel had conceded, the Morales prosecution was timely because that assault occurred in February 1998 and was the subject of an April 2002 criminal complaint and June 2002 indictment.  Further, he said that trial counsel's argument—that the state should have known in September 1997 that Hussain was the perpetrator of the Lewis and Torres assaults—would not have rendered those counts of conviction untimely as they were also the subject of an April 2002 criminal complaint and a June 2002 indictment.

Although the charges relating to the Robinson assault might have been untimely if the limitations period began to run in September 1997 (those charges were the subject of the early 2003 indictment), appellate counsel also stated that he could not have raised an argument about that or the Laboy assault because Hussain had not been convicted of those charges.

The state, relying on that affidavit, argued that appellate counsel was not ineffective for failing to raise the timeliness issue because it was meritless.  And even if it was not meritless, the state argued, counsel was not ineffective for deciding to raise other meritorious arguments on appeal.

The Appellate Division denied the petition, explaining in characteristically succinct language that Hussain "failed to establish that he was denied the effective assistance of appellate counsel."  People v. Hussain, 44 A.D.3d 1073 (2d Dep't 2007) (citing Jones v. Barnes, 463 U.S. 745 (1983) (refusing to adopt a requirement that appellate counsel "raise every nonfrivolous issue requested by the client")).

Hussain's request for leave to appeal to the New York Court of Appeals was denied. People v. Hussain, 10 N.Y.3d 766 (2008) (Read, J.).

### 3. Habeas Petition

Hussain subsequently filed this petition for a writ of habeas corpus and an accompanying memorandum of law. These materials consist of sections of his brief to the Appellate Division and his error coram nobis petition and so raise the same claims raised in those proceedings.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner in state custody pursuant to a criminal judgment of a state court is entitled to federal habeas relief only if he can establish that he is being confined in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254.

Relevant here, AEDPA requires any petitioner seeking federal habeas relief to first provide the state an opportunity to pass upon the legal and factual arguments supporting his petition. This is the requirement of exhaustion. 28 U.S.C. § 2254(a)–(b); see also Daye v. Att'y Gen., 696 F.2d 186, 191–92 (2d Cir. 1982) (en banc).

Claims that are presented to the state courts but denied on state procedural grounds are deemed procedurally defaulted and generally cannot support federal habeas relief. Harris v. Reed, 489 U.S. 255, 262 (1989) ("an adequate and independent finding of procedural default will bar federal habeas review of the federal claim").

The same is true of unexhausted claims that can no longer be presented to a state court. See Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2000) ("when the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present these claims in order to meet the exhaustion requirement would now find the claims procedurally barred, federal habeas courts must also deem the claims procedurally defaulted" (internal quotation marks omitted)).

11

There are exceptions to the rule that procedurally defaulted claims are not subject to review in habeas. A petitioner may obtain review notwithstanding default where he can establish "cause for the default and actual prejudice as a result of the alleged violation of federal law," Coleman v. Thompson, 501 U.S. 722, 750 (1991), or "that he is actually innocent of the crime for which he has been convicted," Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002); see also Schlup v. Delo, 513 U.S. 298, 321–22 (1995) (actual innocence exception appropriate only in "extraordinary cases").

Where a federal claim is properly presented to the state courts and adjudicated against the petitioner on the merits, that claim will support federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)–(2); see also Williams v. Taylor, 529 U.S. 362, 405–06 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005).

The Supreme Court has said that "clearly established federal law" means "the holdings, as opposed to the dicta," of its decisions at the time of the state court adjudication. Williams, 529 U.S. at 412. A decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Id. at 412–13.

A decision involves an unreasonable application of clearly established federal law if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but

unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. An unreasonable application of federal law is more than an incorrect application.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011); see also id. ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."); Renico v. Lett, 130 S. Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## DISCUSSION

The Court construes Hussain's petition, which consists of sections of his brief to the Appellate Division and his error coram nobis petition, as asserting an entitlement to habeas relief on four grounds: (1) the consolidation for trial of charges regarding five sexual assaults violated his due process rights; (2) two erroneous evidentiary rulings rendered his trial fundamentally unfair; (3) several summation comments rendered his trial fundamentally unfair; and (4) he was denied the effective assistance of counsel on appeal.

### I. Consolidation

Hussain's first claim is that the trial court's decision to join several charges concerning five unrelated sexual assaults violated his due process right to a fair trial.

"As a preliminary matter, it should be stressed that the issue for this Court is not whether the consolidation . . . in this case was proper under state law." McCall v. Artus, No. 06 Civ. 3365, 2008 WL 4501834, at 8 (S.D.N.Y. Sept. 29, 2008) (citing Estelle v. McGuire, 502 U.S. 62,

67 (1991)).  It is well settled that federal habeas relief is available only if the consolidation violated Hussain's federal constitutional rights.

"Joinder of offenses has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial" and, consequently, "[j]oinder of offenses rises to the level of a constitutional violation only if it actually renders petitioner's state trial fundamentally unfair and hence, violative of due process." Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993) (internal quotation marks and bracket omitted); see also United States v. Lane, 474 U.S. 438, 449 (1986).

"[W]here a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that actual prejudice resulted from the events as they unfolded during the joint trial." Herring, 11 F.3d at 377–78. "[P]etitioners challenging their state convictions under the general 'fairness' mandate of the due process clause bear an onerous burden." Id. at 378.

The Appellate Division's determination that Hussain had not established that his trial violated his due process rights is not contrary to or an unreasonable application of this clearly established law.

Initially, this trial was not especially long or complicated.  The state charged Hussain with five sexual assaults and with respect to each charge it presented the testimony of the alleged victim who told a story about an encounter with a cab driver who, according to each victim's testimony, forced himself upon her.  The state also presented some relatively straight-forward DNA evidence.  At trial, Hussain simply asked the jury to find the women incredible.

None of that was difficult for the jury to process, so there is little risk that the jury could not understand one or more of the charges and convicted because it understood another better.

14

See Shand v. Miller, 412 F. Supp. 2d 267, 272 (W.D.N.Y. 2006) ("it appears that the proof [of 17 counts of sex offenses against two stepdaughters and four counts of menacing against one of the stepdaughters and the girls' mother over the course of 16 months] was presented separately, and was uncomplicated and easily understood in the minds of the jurors."); see also United States v. Chang An-Lo, 851 F.2d 547, 556 (2d Cir. 1988) (in multi-defendant RICO trial, "the evidence with respect to each of the defendants was adequately straightforward that the jury could consider it without any significant spillover effect").

Additionally, the jury charge in this case reduced the odds that the jury would impermissibly find Hussain guilty of one or more counts simply because it found him guilty beyond a reasonable doubt of some others.

Although the trial court did not deliver what, on appeal, was Hussain's preferred charge, it did specifically instruct the jury that, with respect to the rape counts, the state had to prove beyond a reasonable doubt all of the elements of the crime "as to the offenses with respect to each of the complain[ing] witnesses." (Tr. at 844.)

The trial court then explained the elements of each separate charge with specific reference to the date and victim (e.g. "on or about October 10, 1996, in the County of Kings, the defendant, Intzar Hussain, engaged in sexual intercourse with Kizzy Lewis"). (Id. at 844–45.)

Similarly, it told the jury that it did not have to convict Hussain of all or none of the crimes, explaining with respect to the rape counts that "if you find that the People have not proven . . . either one or both of those elements as to any of those offenses, you must find the defendant not guilty of the crime of rape in the first degree as charged in counts one, three, five, and / or nine." (Id. at 845 (emphasis added).)

The trial court also specifically referred to the alleged victims and dates of incident when charging attempted rape and sexual abuse, which are the crimes of which the jury convicted Hussain with respect to Morales.  (Id. at 847–48, 850–51.)

All of this was sufficient to inform the jury of its obligation to consider each charge in this case separately and to refuse to convict on any charge not independently proved.  See Shand, 412 F. Supp. 2d at 272 ("The court instructed the jury separately on each count of the indictment, although it did not explicitly instruct the jury to consider the evidence of each incident separately."); Holland v. Walker, No. 99-CV-5800, 2005 WL 3591728, at *6 (E.D.N.Y. Dec. 30, 2005) ("the trial judge instructed the jury twice that there were four separate incidents involving six offenses, and further instructed that the jury could 'pick and choose which offenses they want to find him guilty on or not based on how they evaluate the evidence.'  The trial court also gave instructions on the specific elements of each offense that the prosecution had to prove."  (internal record citations and brackets omitted)).

Moreover, it appears that the jury in fact followed these instructions and engaged each count separately.  After being charged and retiring to deliberate, the jury asked to be read all of Morales's testimony and asked to see some DNA evidence and a crime scene photograph from the Lewis incident.  (Id. at 868–70.)  These requests are evidence that the jury followed the trial court's instructions.  See Herring, 11 F.3d at 378 (highlighting fact that the jury "twice requested the rereading of certain testimony" as evidence that the jury "seems to have carefully evaluated the evidence on each count separately"); Reed v. Great Meadow Corr. Facility, 981 F. Supp. 184, 189 (W.D.N.Y. 1997) (noting that jury requested re-reading of victim's testimony in trial of three unrelated rape charges).

Additionally, the jury's refusal to convict Hussain of the charges involving the assaults of Robinson and Laboy strongly suggests that the jury properly segregated the charges that it was asked to decide. See Herring, 11 F.3d at 378; Reed, 981 F. Supp. at 189; Holland, 2005 WL 3591728, at *7 ("The verdict rendered is proof that the jury at the first trial considered each of the charges separately, since the jury convicted the petitioner on one count, acquitted him on two other counts, and was deadlocked on the remaining counts.").

In view of the foregoing, Hussain has not carried his "onerous burden" of showing actual prejudice from which the Court could conclude that he was deprived of a fundamentally fair trial. Herring, 11 F.3d at 378. Relief on this ground is denied.

## II. Evidentiary Errors

Hussain's second claim is that two erroneous evidentiary rulings—the decisions to permit evidence of Hussain's flight to Canada and to permit testimony that detective Litwin, as part of his search for Hussain, contacted the Sexual Assault Squad—violated his due process rights.

As an initial matter, state court application of state evidentiary rules, even if error as a matter of state law, generally will not warrant federal habeas relief. See, e.g., McGuire, 502 U.S. at 67 ("federal habeas corpus relief does not lie for errors of state law"); Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("We acknowledge also our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."). Evidentiary rulings warrant habeas relief only if they violate due process. See generally Sims v. Stinson, 101 F. Supp. 2d 187, 194 (S.D.N.Y. 2000) (explaining Second Circuit law in this area).

Relevant here, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission

violates fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (introduction unfair if evidence not probative of an essential element of the case).

Also relevant, the unfair admission of evidence will only amount to a denial of due process if the admitted evidence, "viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (internal quotation marks omitted). The evidence must have been "'crucial, critical, highly significant.'" Id. (quoting Nettles v. Wainwright, 677 F.2d 410, 414–15 (5th Cir. 1982)).

The admission of evidence of flight to Canada was not unfair. There is no dispute that evidence of flight is relevant because it is probative of consciousness of guilt, which is probative of guilt itself. People v. Cintron, 95 N.Y.2d 329, 332–33 (2000); see also United States v. Al-Sadawi, 432 F.3d 419, 424 (2d Cir. 2005) ("It is well-settled that flight can, in some circumstances, evidence consciousness of guilt."); Diaz v. Greiner, 110 F. Supp. 2d 225, 235 (S.D.N.Y. 2000) ("Admission of evidence showing consciousness of guilt is not so extremely unfair that its admission violated fundamental conceptions of justice." (internal quotation marks omitted)).

The New York Court of Appeals has said that the "probative weight" of evidence of flight "is highly dependent upon the facts of each particular case." Cintron, 95 N.Y.2d at 333. The facts of this particular case, as proved at trial, were that soon after Detective Hawkins, armed with the license plate number that Morales had provided, began investigating Hussain, Hussain disappeared. He did not respond to a call from his dispatcher, failed to turn up at a meeting called by the head of the Taxi and Limousine Commission, turned in his license plates, and left Brooklyn (probably for Canada) where he was later found living under an assumed

identity, which evidence suggested he had been doing for at least three years. And there was evidence suggesting that Hussain was aware of the investigation when he disappeared, including that whoever answered the door at his apartment refused to communicate with Hawkins when he showed up asking to speak with Hussain.

Hussain offered no explanation for his apparent disappearance, instead testifying that he had all along been in Brooklyn and only traveled to Canada shortly before his arrest. He relies heavily on the fact that the state could not establish that he immediately fled to Canada when he supposedly learned that investigators were looking for him in connection with the Morales assault. The state's evidence, however, provided a sufficient basis for the trial court to permit testimony and argument about Hussain's flight to Canada.

The Appellate Division's further determination that Detective Litwin's testimony about contacting the Sexual Assault Squad did not violate Hussain's constitutional rights was also not contrary to, or an unreasonable application of, clearly established federal law.

Litwin initially testified only that he contacted the Montreal Sexual Assault Squad, which probably did not surprise the jury because Litwin was searching for the suspected perpetrator of multiple sexual assaults. It was only after Litwin responded to defense counsel's leading question about why Litwin contacted that unit that the jury learned that Litwin "was acting on independent information." (Tr. at 585.) And it was only after defense counsel pressed that Litwin testified vaguely that he "had very good information that it was important for [him] to speak to the detectives in the Montreal Sexual Assault Squad regarding Mr. Hussain." (Id.)

After an extended discussion (outside the presence of the jury) at which the trial court explained that defense counsel was reading too much into Litwin's statements and that the jury could not have understand the challenged testimony as suggesting that Hussain had been charged

with or convicted of sex crimes in Canada, the trial court struck the last testimony as unresponsive.

There is no colorable argument that Litwin's testimony rendered Hussain's trial fundamentally unfair. None of the testimony, including the struck testimony, directly accused Hussain of committing, or being convicted of, a sex crime in Canada. And although the struck testimony may have suggested a charge or conviction, the trial court instructed the jury to disregard it (the charge to the jury also reminded it to disregard testimony that the trial court had told it to disregard).

That instruction goes a long way towards limiting the effect of what was insignificant evidence to begin with. Machado v. Fischer, No. 05 Civ. 522, 2006 WL 1409727, at *1 (S.D.N.Y. May 19, 2006) ("Here, the court directed the jury to disregard the question and answer, so Machado cannot claim that any evidence was improperly admitted against him."); see also Greer v. Miller, 483 U.S. 756, 767 n.8 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence . . . .").

In any event, the testimony about the Sexual Assault Unit was un-emphasized and did not bear directly on Hussain's guilt. The Appellate Division reasonably concluded that the testimony was not "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins, 755 F.2d at 19.

## III. Summation

Hussain's third claim for relief is that the prosecutor made several impermissible comments during summation and that those comments denied him a fair trial. He complains, as he did to the Appellate Division, that the prosecutor called him a "rapist" and a "predator," said

that he had a "warped mind," called him a "con man" who was "trying to con the jury," and referred to part of his testimony as "absurd."

He also complains about the prosecutor's statement that none of the alleged victims "deserved" to be raped, that cross-examination "wasn't fun" for the alleged victims, and that the jury should send Hussain the message, through its verdict, that he was not above the law.

"The scope of habeas review for allegations of prosecutorial misconduct is 'quite limited.'" Hornedo v. Artus, No. 04-CV-3201, 2008 WL 346360, at *18 (E.D.N.Y. Feb. 6, 2008) (quoting Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1988)). A petitioner asserting improper summation in support federal habeas relief must show more than "that the prosecutor's remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted).

"There must, instead, be a showing that [the petitioner] suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Alexander v. Phillips, No. 02 Civ. 8735, 2006 U.S. Dist. Lexis 8926, at *40–41 (S.D.N.Y. Feb. 21, 2006) (internal quotation marks omitted); see also United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999) ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute egregious misconduct." (internal quotation marks omitted)).

### A. Merits Denial <u>with</u> Partial Procedural Bar

All but two of Hussain's arguments about summation are procedurally barred, and the remaining two arguments do not warrant relief.

**1.** The Appellate Division refused to review all but two of the allegedly improper comments that Hussain alleged violated his rights because Hussain had not objected to them at

trial.  See N.Y. C.P.L. § 470.05(2) (contemporaneous objection rule); see also People v. Rivera, 73 N.Y.2d 941 (1989).

That state procedural ruling generally bars federal habeas review of asserted errors because the "Second Circuit recognizes New York's contemporaneous objection rule as an adequate state procedural rule."  Gonzalez v. Cunningham, 670 F. Supp. 2d 254, 261 (S.D.N.Y. 2009).

And the ruling is sufficient to bar review of these specific asserted errors.  See, e.g., Rhodes v. Ercole, No. 07-CV-1039, 2009 WL 134639, at *4 (E.D.N.Y. May 13, 2009) ("Regarding the petitioner's challenges to the prosecutor's summation, some of the challenges are procedurally barred while some warrant review by this court."); Jones v. Scully, No. 92-CV-5096, 1996 WL 680258, at *1 (E.D.N.Y. Nov. 8, 1996) ("Those statements to which no objection was raised at trial are therefore procedurally barred from review by this Court.").

Hussain has arguably asserted ineffective assistance of counsel as "cause" sufficient to overcome this procedural bar.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000) ("Although we have not identified with precision exactly what constitutes 'cause' to excuse a procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice.").

In his brief to the Appellate Division, Hussain closed the section that included the argument about summation comments with the sentence: "To the extent the Court declines to consider the arguments about the unpreserved summation arguments in the interest of justice, counsel's failure to object, separately, and in conjunction with his other errors, denied the appellant the effective assistance of counsel under the federal and state constitutions."  (App. Br.

59–60.)  Hussain's pro se memorandum of law in support of his federal habeas petition, which contains sections of his appellate brief, contains the same sentence.  (Pet. Mem. at 29–30.)

The Court doubts that this single sentence in Hussain's brief to the Appellate Division sufficed to fairly present that constitutional claim to that court, but even if it did, the ineffective assistance claim cannot excuse Hussain's default because Hussain did not properly exhaust it.

Relevant here, "ineffective assistance adequate to establish cause for procedural default of some other constitutional claim is itself an independent constitutional claim," which means that an ineffective assistance claim asserted as grounds to excuse procedural default must, like any other claim, be presented first to the state courts.  Id. at 451–54.  And that means it must be presented not only to the Appellate Division, but also to the Court of Appeals.  See, e.g., Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).

Hussain's letter requesting leave to appeal from the decision of the Appellate Division (Resp. Ex. E) did not properly present the ineffective assistance claim to the Court of Appeals. Hussain's initial letter to the Court of Appeals said that he was requesting review of "all issues outlined in the defendant-appellant's brief" to the Appellate Division.

The letter closed that sentence with a footnote that identified the "issues" as the six points (two general points with three sub-points) principally argued to the Appellate Division, which the Court described at the beginning of this order.  The letter to the Court of Appeals did not mention ineffective assistance of counsel at all.

Hussain sent a follow-up letter to the judge to whom his request for leave was subsequently assigned, which letter argued at length about the allegedly erroneous admission of testimony about the Sexual Assault Squad and pressed that Hussain's case presented an

opportunity to clarify New York law regarding the circumstances in which an error like that can be harmless in the light of uncorroborated complainant testimony.

The follow-up letter closed by stating that in addition to that issue, Hussain requested review of "all issues outlined in th[e] brief" to the Appellate Division. A footnote then listed the six issues raised in the Appellate Division (again, the two main points, each of which contained three sub-points). Neither the footnote nor the above-the-line text of the letter mentioned ineffective assistance of counsel.

These two letters did not fairly inform the Court of Appeals of Hussain's ineffective assistance claim. No judge reading Hussain's letter would understand that when he identified six specific issues in a list that on any reasonable reading purported to describe "all issues outlined in the defendant-appellant's brief" Hussain was in fact identifying only six of seven issues that he wanted the Court of Appeals to review.

The Second Circuit has held that litigants must give state courts more notice than this. See Ramirez v. Att'y Gen., 280 F.3d 87, 97 (2d Cir. 2001); Jordan v. Lefevre, 206 F.3d 196, 198–99 (2d Cir. 2000) (requesting review "for all of these reasons and the reasons set forth in [the] Appellate Division briefs" not sufficient to raise anything other than the Batson claim argued at length because statement could refer to other reasons supporting Batson claim as easily as it could have meant other unrelated claims in the briefs).

As Hussain cannot now exhaust his ineffective assistance claim by filing another leave letter or raising the claim in a new collateral proceeding, the Court deems the claim unexhausted but procedurally defaulted. See, e.g., Grigg v. Phillips, No. 04-CV-663, 2009 WL 2983030, at *5 (E.D.N.Y. Sept. 11, 2009) (claims defaulted because petitioner was entitled to one leave letter and could not raise any claims in a subsequent collateral proceedings that had been denied on

24

direct review).  Hussain has not asserted, much less established, cause and prejudice or actual innocence to overcome this bar.

**2.**  In view of this procedural bar, Hussain's due process claim relies on the argument that the two comments to which Hussain did object (i.e. "warped mind" and victims beneath the law) rendered his trial fundamentally unfair.  For reasons that the discussion in the following section should make clear, the Appellate Division's decision that those remarks did not render Hussain's trial fundamentally unfair plainly is not contrary to or an unreasonable application of clearly established federal law.

### B.  Merits Denial <u>without</u> Partial Procedural Bar

Even if the Court considers all of the summation comments about which Hussain complains, Hussain has not established his entitlement to habeas relief.

Some of the prosecutorial comments with which Hussain takes issue were not improper.  For example, the prosecutor's description of Hussain as a "rapist" (a descriptor she used only a few times) was a fair statement about what the evidence at trial showed, which is that Hussain raped more than one woman.  <u>See, e.g.</u>, <u>United States v. Pungitore</u>, 910 F.2d 1084, 1127 (3d Cir. 1990) (prosecutor's reference to defendant as "cold-blooded murderer" and other defendants as "mob killers" fair comments on evidence).

And Hussain cannot credibly take issue with the use of the term "rape" to describe the sexual assaults at issue because defense counsel (who offered his summation first) more than once described the crimes at issue as rape and even asserted the absurdity of the state's case by sarcastically referring to his client as a "crazy, knife wielding rapist."  (Tr. at 778, 789.)

Moreover, the prosecutor's isolated description of Hussain's argument that the complainants in this case agreed to have consensual sex with a cab driver whom they had just

met as "absurd" was a fair attack on Hussain's theory of the case. <u>Hannah v. Hendricks</u>, No. 04 Civ. 2497, 2006 WL 83106, at *16–17 (D.N.J. Jan. 11, 2006) (description of defense theory as absurd fair comment).

Much of the balance of the prosecutorial comments, which was arguably improper, incorporated or responded to comments or arguments pressed by defense counsel in his summation, which is a consideration relevant to assessing the prejudicial effect of the comments. <u>Darden</u>, 477 U.S. at 179 ("The prosecutor's comments must be evaluated in light of the defense argument that preceded it . . . ."); <u>United States v. Young</u>, 470 U.S. 1, 12 (1985) ("In this context, defense counsel's conduct, as well as the nature of the prosecutor's response, is relevant.").

For example, the statement that Hussain was a "con man" who was "trying to con" the jury, incorporated Hussain's argument that he was not a rapist but a con man who had conned the alleged victims into having consensual sex with him (<u>Id.</u> at 767, 791, 793).

This incorporation weakens its prejudicial effect. <u>Darden</u>, 477 U.S. at 179–80 (improper comments, including those that "incorporated the defense's use of the word 'animal'" to describe murderer, not sufficiently prejudicial in light of defense counsel's comments).

Other comments can fairly be understood as responses to Hussain's arguments. For example, the prosecutor's comment that Hussain preyed on women he thought would not complain can be understood as a response to Hussain's suggestion that he could not have known that Laboy was a drug addict because he did not "prey[]" on her or "see[] it on her." (<u>Id.</u> at 784.)

Moreover, Hussain's attacks on the credibility of the victims invited the prosecutor's comments about the difficult cross examination that the women endured. <u>See</u> <u>Fuentes v. Ebert</u>, No. 06 Civ. 5813, 2009 WL 1755500, at *14 (S.D.N.Y. June 22, 2009) (attacks on credibility

"invited a response that suggested that, rather than being dishonest or coached, [the victim] had been victimized for an extended period of time and was showing courage at trial by coming forward to testify").

Other of the prosecutor's arguably improper comments— invoking sympathy for the victims and encouraging the jury to send the defendant a message—simply are not the sort of comments that have been found sufficient to warrant reversal under the due process standard.

See, for example, Walker v. Gibson, 228 F.3d 1217, 1243 (10th Cir. 2000) ("Although this court does not condone prosecutorial remarks encouraging the jury to allow sympathy to influence its decision, it is likely the nature of the crime itself produced sympathy before the prosecutor made any comments . . . . The prosecutor's appeals to emotion were not sufficient to render the trial fundamentally unfair."); Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (comments, including that victim was virtuous and that community cried out for "safer streets," did not render trial fundamentally unfair); and Williams v. Donnelly, Nos. 00-CV-4445, 00-CV-4447, 00-CV-4448, 2005 WL 2290592, at *12–13 (E.D.N.Y. Apr. 12, 2005) (victim was "hard working man, who was trying to live the American dream").

Moreover, there is the important consideration that given the evidence at trial there is no real reason to suspect that Hussain's conviction on the three charges of which he was convicted would have been meaningfully less likely "absent the improper statements." United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981).

The Court has reviewed the summations, and concludes that Hussain has not carried his heavy burden of establishing his entitlement to relief based upon the prosecutor's allegedly improper comments. The allegedly improper statements, alone or in aggregate, did not so infect the trial as to render it fundamentally unfair.

27

**IV. Ineffective Assistance of Appellate Counsel**

Hussain's final claim is that he received ineffective assistance of counsel on appeal because counsel did not raise the statute of limitations defense that was the subject of pre-trial motion practice.

The familiar two-part test of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which requires a showing of professionally unreasonable performance and prejudice resulting from that performance, governs claims of ineffective assistance of counsel on appeal.  <u>Ramchair v. Conway</u>, 601 F.3d 66, 73 (2d Cir. 2009).

With respect to reasonable performance on appeal, "counsel does not have a duty to advance every nonfrivolous argument that could be made.  However, a petitioner may establish constitutionally inadequate performance by appellate counsel if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted).

The state collateral court adjudicated this claim on the merits and the Court cannot say that its adjudication is contrary to or an unreasonable application of this law.  Hussain has offered no persuasive reason to doubt appellate counsel's determination that even a defendant-favorable view of the facts (i.e. that the state should have known that Hussain was the perpetrator of the charged assaults in September 1997) would not have supported an attack on any of the counts of conviction; those counts were all the subject of criminal prosecutions initiated within five years of September 1997.  Counsel was not ineffective for failing to raise unmeritorious arguments.

That the substantial and well-briefed arguments asserted on appeal did not ultimately prevail does change that fact.  <u>Pain v. New York</u>, No. 04-CV-1232, 2007 WL 2902955, at *2

(E.D.N.Y. Oct. 1, 2007) ("That the two grounds raised on appeal were ultimately unsuccessful does not render appellate counsel constitutionally deficient.").

The state court's denial of this claim was not contrary to or an unreasonable application of clearly established federal law.  Relief on this ground is denied.

## CONCLUSION

The petition is denied.  Because there has been no substantial showing of the denial of a constitutional right, no certificate of appealability shall issue.  28 U.S.C. § 2253(c).  The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
   April 19, 2011

_____/s/_____
Carol Bagley Amon
Chief United States District Judge

Copy mailed to:
Intzar Hussain
Inmate No. 04 A 4347
Attica Correctional Facility
639 Exchange Street
Attica, NY 14011-0149